UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GUARDIAN PIPELINE, L.L.C.,
a Delaware limited liability company,

       Plaintiff,

v.

295.49 ACRES OF LAND, more or less,       Case No. 08-C-28
in Brown County, Calumet County,
Dodge County, Fond du Lac County,
Jefferson County and Outagamie County,
Wisconsin, et al.,

       Defendants.

## ORDER DENYING PLAINTIFF'S MOTION IN LIMINE

This matter is before the Court on the motion in limine of plaintiff Guardian Pipeline, LLC ("Guardian"). (Doc. # 464.) Guardian seeks an order precluding two of the Daniel O. Becker defendants, Viola T. Family, LLC ("Viola"), owner of Tract 709, and Jack Richeson, owner of Tract 413, from introducing evidence at the Condemnation Commission hearings of subdivisions not in existence as of the date of taking in this case, along with any expert appraisal testimony based upon such evidence.[1] Viola would have the Commissioners consider the opinion of its land planner, Warren Utecht of Martensen and Eisele, Inc., along with the opinion of its appraiser, Craig Hungerford. Viola intends to use these opinions to establish that the highest and best use of its land would be a residential subdivision. Viola also seeks to use the opinions in order to show the

---

[1] Although Guardian's motion is framed in terms of the tracts owned by both Viola and Richeson, in its supplemental brief Guardian indicated that it does not object to Richeson's use of an expert report containing hypothetical subdivisions, so long as Richeson does not use such evidence "for impermissible purposes". (Doc. # 485 at 4.)

Commission that Guardian's pipeline will require Viola to build more road in the planned subdivision and construct a landscaped berm to make Guardian's valve transfer site less of an eyesore. After a hearing on the motion, the Court invited the parties to submit additional briefs, though even after another round of briefing, the issue remains tangled. For the reasons stated below, the motion will be denied.

Guardian's first reason for excluding evidence relating to subdivisions on the Viola property is that just compensation cannot be awarded based upon hypothetical per lot valuations. Guardian cites *Watson v. Milwaukee & M.R. Co.*, 57 Wis. 332, 15 N.W. 468 (Wis. 1883), which does support its argument on this point. In *Watson*, the Wisconsin Supreme Court stated that "the proper rule for estimating damages" in a condemnation action is

> the fair market value of the land at [the time of the taking] *for any purpose* for which it might reasonably be used in the immediate future,–not what would lots sell for in the distant future if a street were opened and lots opened for sale. Nor, indeed, is the price per lot a measure of value, either in the near or the distant future.

15 N.W. at 479. Other authorities also indicate that a per lot approach to valuation is inappropriate where the property is raw land, as it is in this case. *See* 4 NICHOLS ON EMINENT DOMAIN § 12B.14[1][a] ("In most cases, however, the courts have adopted the approach that raw land as such, with little or no improvements or preparation for subdivision, may not be valued as if the land were in fact a subdivision. Thus, the 'lot method' approach to valuation may not be used. The measure of compensation is not the aggregate of the prices of the lots into which the tract could be best divided, since the expense of clearing off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, holding it, and paying taxes and interest until all the lots are disposed of cannot be ignored, and is too uncertain and conjectural to be computed.") (footnotes omitted).

2

Here, it does not appear that Hungerford's appraisal of Viola's property is on a per lot basis. In his report, Hungerford utilized a comparable sales approach and looked at recent sales of large residential properties in order to arrive at an opinion that Viola's property was worth $10,716 per acre. Instead of being based on impermissible per lot values, Viola contends that Hungerford's appraisal merely "shows what needs to occur so as not to destroy the feasibility of a $2.3 million dollar real estate development project." (Doc. # 488 at 13.) Thus, Viola appears most interested in admitting evidence of the cost to cure damages it attributes to the pipeline on its land, land it avers could be residential.

Guardian asserts that "cost to cure" damages are not permitted if they exceed the "severance damages" (i.e., the damages to the fair market value of the remainder of the property because of a partial taking). Guardian's position is that Viola's appraisal expert inappropriately arrived at a cost to cure of $197,886, as the cost to cure greatly exceeds his estimated severance damages of $10,000. But this comparison appears inappropriate given Viola's contention that its appraiser's severance damage calculation assumed that remediation would have occurred.[2] (Doc. # 488 at 14.) Guardian also maintains that the cost to cure damages are speculative, as they amount to costs associated with changes to a subdivision that only existed on paper.

Hungerford arrived at his cost to cure figure by tallying his estimates of landscaping and berm construction costs to mitigate the effects of the transfer valve site installed on the Viola property by Guardian, $89,910, and the construction costs of additional roads beyond what had been planned for the subdivision, $107,976. (Simmons Decl. Ex. A at 20-21.) While Guardian correctly states the law regarding the permissibility of cost to cure damages, i.e., that they cannot

---

[2]Viola also argues that this number only accounts for one of the two parcels.

3

exceed severance damages, *see* WIS JI-CIVIL 8103, the comparison in this case is complicated by the fact that the amount of severance damages is in dispute. Guardian's expert determined the severance damages to be $3,200, the difference between the value of the amount of agricultural land before the taking, $229,400, and the value after the taking, $226,200. (Doc. # 488-4 at 2.) This is in stark contrast to cost to cure advanced by Viola's expert, as Hungerford assumed that the highest and best use of the land would be residential, not agricultural. Further complicating matters is the fact Viola appears to argue that the land could only be used as residential property if the effects of the transfer valve site are addressed and longer roads built.

I conclude that Viola should be permitted to provide the Commission with its expert's opinion that the highest and best use of the land is residential. As Viola observes, the highest and best use is not based upon the subjective intent of the condemnee, and such use may be prospective so long as it is reasonable. The Wisconsin Supreme Court has stated:

> It is well established that market value in an eminent-domain proceeding is to be based not necessarily on the use to which the property was being put by its owner at the time of taking but rather on the basis of the highest and best use, present or prospective, for which it is adapted and to which it might in reason be applied.

*Bembinster v. Dep't of Transp.*, 57 Wis. 2d 277, 283, 203 N.W.2d 897 (Wis. 1973) (citations omitted). Viola notes that at one point Guardian itself seemed to operate with the understanding that the highest and best use was residential, and has now "flip flopped" in its claim that the highest and best use is vacant agricultural land. (Doc. # 488 at 3-6.) While this matter is before the Court on a motion for a ruling on the admissibility of Viola's evidence, Guardian really seems to be asking the Court for a ruling on the reasonableness of prospective residential use of the land, a matter more appropriately resolved by the Commission.

4

The appraiser's opinion regarding the cost of mitigating the effects of the transfer valve site is also proper for the Commission to consider. It does not require any speculation to conclude that mitigating the effects of the transfer valve site is necessary in order to convert the land to residential use. As it will be permitted to introduce evidence that the land could reasonably be adapted to residential use, Viola may also introduce evidence relating to the cost of additional road lengths. Should Guardian be of the opinion after the hearing that the Commission made an erroneous determination of the highest and best use of the Viola property, it may raise the issue at that point.

Accordingly, Guardian's motion is **DENIED**.

**SO ORDERED** this ___14th___ day of October, 2009.

                                          s/ William C. Griesbach
                                          William C. Griesbach
                                          United States District Judge