UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GUARDIAN PIPELINE, L.L.C., a Delaware
limited liability company,

            Plaintiff,

    v.                                            Case No. 08-C-0028

295.49 ACRES OF LAND, more or less,
in Brown Co., Calumet Co., Dodge Co.,
Fond du Lac Co., Jefferson Co., and
Outagamie Co., WI, et al.,

            Defendants.

**MEMORANDUM AND ORDER**

On January 20, 2010, the Federal Condemnation Commission of the Eastern District of Wisconsin, Green Bay Division ("Commission") awarded $107,100 to Jack and Linda Richeson in compensation for the partial taking of a permanent easement by Guardian Pipeline, L.L.C. ("Guardian"). After considering briefs from both parties and holding a hearing on August 17, 2010, this Court modified that amount and awarded the Richesons $28,796.32 in fair and just compensation for the partial taking of the permanent easement. On September 21, 2010 the Richesons filed the subject "Motion to Revise Decision and Order, to Amend and Alter Decision and Order, and for Other Relief" (hereinafter "Motion to Revise"). (Dkt. 596.) Guardian filed a timely response. (Dkt. 607.) The Richesons have filed their reply (Dkt. 613) and this matter is now ripe for disposition. For the reasons set forth herein, the Richesons' motion will be granted in part and denied in part.

As an initial matter, Guardian's response brief was filed timely. Guardian filed its response on October 22, 2010. From September 28, 2010, when the Richesons first complied with Civil L.R. 7 by notifying the Court and Guardian that they did not intend to submit a brief with their motion, Guardian had 21 days plus three additional days as provided by Fed. R. Civ. P. 6(d) to file a response. Guardian's time did not start to run on September 21, 2010 because on that date the Richesons had not yet complied with Civil L. R. 7.

Fed. R. Civ. P. 54(b) provides that, in an action involving multiple parties, the Court may revise any order that adjudicates fewer than all claims at any time prior to the entry of judgment adjudicating all the claims. That is the case here. While this Court's award related only to the Richeson tract, the larger case involving numerous other landowners and Guardian remains open. Thus, there has not been a "final judgment" in the larger case and, under Fed. R. Civ. P. 54(b), this Court has discretion to revise the Richeson award. Motions to revise an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e): to correct manifest errors of law or fact or to present newly discovered evidence. *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.,* 561 F. Supp. 656, 665-66 (N.D. Ill.1982), *aff'd*, 736 F.2d 388 (7th Cir.1984) (citation and footnote omitted)), *amended by*, 835 F.2d 710 (7th Cir.1987). *Compare Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) (providing nearly identical standard for motion under Rule 59(e)). Motions for reconsideration and motions to revise serve a very limited purpose in federal civil litigation. "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan,* 987 F. Supp. 1063, 1069 (N.D.

Ill. 1997)). Such motions are disfavored and should be "rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990).

In light of this standard, I now turn to the merits of the Richesons' motion. The Richesons contend that this Court's Decision and Order awarding them $28,796.32 contained four errors of fact. First, the Richesons argue that Mr. Richeson was never compensated for damages to the landscaping. Second, they argue that the Oregon study by Dr. Eric Fruits is inapplicable to the determination of the diminution in value of the Richeson tract. Third, the Richesons aver that the diminution in value of their property was substantially higher than 2%. Finally, according to the Richesons, there is a perception in the market that large underground gas transmission lines are "unsafe and prone to explosion." (Motion to Amend at 2.)

The Richesons also raise five errors of law. They claim that the Court did not consider damages resulting from the actual severance—specifically the damage to the property from actually digging the trench through the Richeson tract and burying the pipeline. They argue that this Court improperly based its decision, in part, on a finding that the Condemnation Commission's report was conclusory. The Richesons note that the Court did not make any determination of the interest due, which they maintain should be 5%. The Richesons argue that this Court did not consider all three factors causing diminution in value: the damage to the area subject to the permanent easement, damage to landscaping, and damages related to stigma. Finally the Richesons suggest that because the credibility of dueling appraisers was a pivotal consideration, it was not appropriate for this Court to make a determination on a cold transcript contrary to the determination by the Commission—which had the opportunity to observe both appraisers testify in person.

3

In light of these purported errors of law and fact the Richesons ask this Court to alter and amend the judgment. In the alternative, the Richesons request a new trial. In support of their requests the Richesons submit a number of affidavits from real estate agents and economists. The economists take issue with the methodology of the Oregon Study. (Dkt. 596, Ex. 2 ¶ 15; Dkt. 596, Ex. 3 ¶ 8.) The real estate agents opine on how much the property would have to be discounted to sell in light of the gas pipeline easement; they suggest that the Richeson property would have to be discounted anywhere from 10% to 25%. (Dkt. 596, Ex. 4 ¶ 12; Dkt. 596, Ex. 5 ¶ 13.) Much of this evidence is improper expert testimony that has never been disclosed as required by Fed. R. Civ. P. 26(a)(2) or this Court's scheduling order. (See Dkt. No. 344 at 5-6.) Guardian had not heard of Mssrs. Caves, Reaser and Volkman until it received Mr. Richeson's present motion. (See October 21, 2010 Decl. of Jeffrey A. Simmons ¶ 2.) Though Mr. Kielisch served as an expert appraiser for other landowners represented by different counsel, he was not disclosed as an expert by Mr. Richeson. To accept the Richesons' argument that "the papers themselves served as supplements" would render Fed R. Civ. P. 26(a)(2) and this Court's prior scheduling order meaningless insofar as the Richesons would be allowed to disclose by supplementing at their convenience regardless of what the scheduling order specified. Fair and efficient resolution of such cases is not promoted by allowing parties to wait until well past the eleventh hour—after a commission hearing, after a round of briefing, after a hearing before this Court and even after the Court's decision—to disclose evidence that was previously available. The Richesons had an opportunity to present testimony or evidence at the August 17, 2010 hearing. They presented only argument. None of the declarations or documents submitted by the Richesons in support of their Motion to Revise qualify as "newly discovered" evidence because they were certainly available to the Richesons earlier. In fact the

4

Richesons concede that some of the evidence was not just available but was actually in their possession prior to the August 17, 2010 hearing. (Motion to Amend at 6-8.)

An amended judgment is warranted in one respect. An award of 5% interest is proper and this Court will amend its award granting the Richesons 5% interest per annum, starting on the January 9, 2008 date of taking. Guardian agrees that this method of calculating interest is proper here. (Dkt. 607 at 4.)

Jack Richeson's new declaration (Dkt. 596, Ex. 1) indicates that he has not been compensated for damages to landscaping. But he does not specify how much Guardian should pay for such landscaping repair. At oral argument on August 17, 2010, counsel for the Richesons stated that the driveway and landscaping had been restored. The Court remains under the impression that Guardian patched the driveway and replaced the earth and landscaping, to the extent possible, over the pipeline trench. As such Guardian has addressed those issues. It is not clear what other damages to landscaping Mr. Richeson refers to.

To the extent the Richesons seek compensation for the loss of individual trees, the Unit Rule makes such compensation improper. This Court has previously ruled that evidence regarding the replacement value of trees cut down during construction of the pipeline is excluded under the Unit Rule. (Dkt. No. 484 at ¶ 2.) Under Wisconsin Law, when a tract is taken by eminent domain, the compensation awarded is for the land itself and not for the sum of the different interests therein. *Green Bay Broadcasting Co. v. Redev. Auth. of the City of Green Bay,* 116 Wis. 2d 1, 11, 342 N.W. 2d 27, 32 (1983). Under the Unit Rule, there is no separate valuation of the natural attributes of land. *City of Milwaukee Post No. 2874 v. Redev. Auth. City of Milwaukee,* 2009 WI 84, ¶ 39, 307, 768 N.W. 2d 749. Although Appraiser Mac Williams included 9 replacement trees at $1,000 in his

5

compensation summary (Guardian Appraisal at 1), the Unit Rule precludes the Court from compensating the Richesons for each specific tree that had to be cut down or moved. But that does not mean the Court ignored the general loss of landscaping or the general loss of trees in its decision. In contrast to the Richesons' assertions, this Court did in fact consider the overall loss of landscaping in determining the diminution in value of the Richeson property. The Court specifically referenced the fact that the Richesons have lost the ability "to landscape over the pipeline" when it awarded them 50% of the value of the 1.48 acres directly affected by the permanent easement. (Dkt. 582 at 5.) This Court is mindful of the fact that the Richesons will not be able to plant trees directly over the pipeline, which certainly limits their use or enjoyment of their property. This is one of many considerations supporting the award of $28,796, an award significantly higher than that Guardian argued for. In sum, because the Unit Rule applies here and because this Court considered the general loss of trees, no additional compensation is warranted for landscaping.

Other than the amendment related to 5% interest, this Court's order will not be further revised. The Richesons have not shown any manifest errors in law in this case because none of the purported errors of law equate to a "wholesale disregard, misapplication, or failure to recognize controlling precedent." While the Richesons may be disappointed by an award of $28,796.32 and while experts may disagree over the magnitude of the property's diminution in value, such factors do not warrant granting a motion to revise. Even assuming the Richesons' economists are correct that the Oregon Study is not applicable, there are ample reasons apart from the Oregon Study to support an award of $28,796.32. Jack Richeson testified that he didn't think the completed pipeline easement "looks that bad." (Tr. at 37:23-38:7.) And Appraiser Mac Williams cited seven examples in which Wisconsin property buyers and sellers stated that a permanent natural gas pipeline did not

influence their purchase or sales prices. (Guardian Appraisal at 37-42.) After reviewing the Richesons' newly presented affidavits of economists and real estate agents as well as their supporting documents, this Court is not persuaded that any manifest errors in law or fact necessitate revising the award of $28,796.32.

Nor is a new trial warranted. The Richesons had ample opportunity to present their evidence prior to this Court's August 24, 2010 Decision and Order; they could have submitted the evidence in briefs or affidavits, or presented it at the August 17, 2010 hearing. A new trial is not appropriate where a party waits until after a court has made a decision to present key evidence that was either available to the party beforehand or already in the party's possession.

Accordingly, and for the reasons set forth herein, the Richesons' Motion to Revise is **GRANTED** insofar as the $28,792.32 award shall now include 5% interest per annum, beginning on the January 9, 2008 date of taking**.** In all other respects the motion is **DENIED.**

Dated this ___26th___ day of November, 2010.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge